WO

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dennis Waddell, | No. CV-16-00848-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before the Court is Plaintiff's appeal of the Commissioner's denial of his application for social security disability benefits. The parties are familiar with Plaintiff's medical history; therefore, the Court will discuss it below only as necessary for the decision.

On appeal, Plaintiff claims the Administrative Law Judge (ALJ) committed three errors that require reversal for an award of benefits; specifically, Plaintiff claims the ALJ erred by: 1) finding that Plaintiff could perform jobs that are inconsistent with Plaintiff's residual functional capacity; 2) not finding Plaintiff's knee, wrist, and urinary conditions more severe; and 3) not finding Plaintiff credible. The Court will address each of these claims of error in turn.[1]

## I.    Jobs within Plaintiff's Residual Functional Capacity

The ALJ found a number of limitations impacted Plaintiff. Doc. 8-3 at 17. Based

---

[1] The ALJ's decision to deny benefits will be overturned "only if it is not supported by substantial evidence or is based on legal error." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (quotation omitted).

1   on those limitations, the ALJ determined Plaintiff's residual functional capacity. [2]  *Id.*

2   The ALJ then found Plaintiff could perform three jobs that are available in the economy;

3   specifically: 1) Hand Packer; 2) Linen Room Attendant; and 3) Dishwasher.  Doc. 8-3 at

4   22.

5        **A.    Hand Packer**

6        Plaintiff argues that because the ALJ found he could only frequently use his upper

7   extremities for fine and gross manipulation and feeling (rather than unlimited use),

8   Plaintiff cannot do the hand packer job because the Dictionary of Occupational Titles

9   states that the hand packer job requires "constant" handling, grasping and feeling.  Doc. 9

10  at 14.  Thus, Plaintiff's issue appears to be a dispute between the meaning of "frequent"

11  and the meaning of "constant."

12       At the hearing, the ALJ specifically asked the vocational expert whether someone

13  with Plaintiff's residual functional capacity (which included frequent use of his upper

14  extremities) could perform any jobs.  Doc. 8-3 at 21-22.  The vocational expert testified

15  that Plaintiff could perform the job of hand packer.  Doc. 8-3 at 22.  Relying on this

16  expert testimony, the Court concludes that someone who can "frequently" use his upper

17  extremities can constantly handle, grasp and feel.  Accordingly, the Court finds the ALJ

18  did not commit error with respect to the finding that Plaintiff could perform the job of

19  hand packer.

20       **B.    Linen Room Attendant**

21       Plaintiff argues that the ALJ's finding that Plaintiff could perform the job of linen

22  room attendant was error for two reasons.  First, Plaintiff argues that because the ALJ

23  found that Plaintiff should avoid exposure to gas, dust and fumes, (Doc. 8-3 at 17),

24  Plaintiff cannot be a linen room attendant.  Doc. 9 at 14.  While Plaintiff concedes that

25

26      [2] The regulations require that the ALJ make a finding regarding a plaintiff's
"residual functional capacity based on all the relevant medical and other evidence in [the]
case record." 20 C.F.R. § 404.1520(e). A plaintiff's "residual functional capacity" is the
27  most he can still do despite all his impairments, including those that are not severe, and
any related symptoms. *Id.* § 404.1545(a)(1).
28

the Dictionary of Occupational Titles does not list dust, gas or fumes as a linen room attendant job hazard (*id*); Plaintiff nonetheless argues, "laundry products and large amounts of linens would necessarily result in dust and fumes." *Id*. Plaintiff cites nothing for this argument. Conversely, the vocational expert, even considering Plaintiff's limitation of not being exposed to gas, dust or fumes, testified that Plaintiff could perform this job. Doc. 8-3 at 21-22. And, as Plaintiff concedes, this testimony is consistent with the Dictionary of Occupational Titles. On this record, there is no basis to conclude Plaintiff cannot do this job. Accordingly, the ALJ did not commit error.

Second, Plaintiff argues that the ALJ committed error in concluding Plaintiff could be a linen room attendant because the job is too difficult. Doc. 9 at 14. Specifically, Plaintiff lists the components of the job from the Dictionary of Occupational Titles, including segregating, counting and recording the number of linens and uniforms for laundry and mending, conducting monthly and yearly inventories, and maybe some mending. *Id*. Plaintiff notes that the ALJ found that Plaintiff was limited to performing simple tasks. Doc. 8-3 at 17. Plaintiff then concludes, "Conducting inventories and mending clothes are not simple tasks." Plaintiff cites nothing for this conclusion. Conversely, the vocational expert, who was informed of Plaintiff's limitations, including performing only simply tasks, testified that Plaintiff could perform this job. Based on this expert testimony, the Court finds the ALJ did not commit error in concluding that Plaintiff could perform this job.

## C.    Dishwasher/Kitchen Helper

Plaintiff argues two reasons why the ALJ erred in concluding that Plaintiff could perform the job of dishwasher. First, Plaintiff argues that, per the Dictionary of Occupational Titles, the job requires "constant" handling and reaching, but Plaintiff is limited to frequent use of his upper extremities for fine and gross manipulation and feeling. Doc. 9 at 14. As discussed above with respect to the hand packer job, the vocational expert testified that Plaintiff could perform the dishwasher job with his limitations. Relying on this expert opinion, the Court finds the ALJ did not err in

1    concluding Plaintiff could perform this job.

2          Second, while Plaintiff concedes that the Dictionary of Occupational Titles does

3    not list dust, fumes or gas as a hazard of being a dishwasher, it does list weather, cold,

4    heat, wetness, humidity, atmospheric conditions and other environmental conditions.

5    Doc. 9 at 14.  Plaintiff argues, without citation, that the humidity and other atmospheric

6    conditions of being a dishwasher would prevent him from doing the job.  *Id*.  Again, the

7    vocational expert was aware of Plaintiff's limitations and concluded Plaintiff could

8    perform this job.  Given this expert testimony, the ALJ did not err in finding Plaintiff

9    could be a dishwasher.

10         **D.    Conclusion Regarding Available Jobs**

11         In sum, Plaintiff does not argue that the ALJ incorrectly identified Plaintiff's

12   limitations.  Instead, Plaintiff argues that the vocational expert mistakenly concluded that,

13   even with these limitations, Plaintiff could perform the jobs identified in the ALJ's

14   decision.  On this record, this Court cannot overturn this expert testimony.  Accordingly,

15   the Court finds the ALJ did not commit error in accepting the testimony of the vocational

16   expert after correctly identifying Plaintiff's residual functional capacity.

17   **II.   Severity of Plaintiff's Conditions**

18         Next, Plaintiff takes issue with the level of severity the ALJ attributed to

19   Plaintiff's conditions.  Plaintiff appears to take issue with the ALJ's assessment of his

20   knee, wrist, and urinary issues.  Doc. 11 at 3-4.

21         **A.    Knees**

22         The ALJ found that Plaintiff had condracalcinois and degenerative arthritis in both

23   knees.  Doc. 8-3 at 14.  The ALJ found this condition to be severe.  *Id*.  The ALJ imposed

24   limitations on Plaintiff's ability to work based on this severe condition, including

25   standing 6 out of 8 hours, sitting 6 of 8 hours, frequent climbing, frequent crawling and

26   occasional kneeling.  Doc. 8-3 at 17.

27         Plaintiff argues that the ALJ should have found Plaintiff's knee condition to be

28   even more limiting.  Doc. 4 at 9.  Plaintiff states, without citation, "These are not knees

that can stand all day and carry fifty pounds up to one third of the day." *Id*.

The ALJ relied on the medical record of Dr. Zeman to determine the severity of Plaintiff's knee limitations.  Doc. 8-3 at 18.  Specifically, the ALJ noted that in 2013 Plaintiff saw Dr. Zeman.  *Id*.  Dr. Zeman noted that Plaintiff can walk half a mile with no difficulty, did not have difficulty getting on and off a table, and did not have difficulty with mobility for household chores.  *Id*.  Dr. Zeman recommended Plaintiff have physical therapy and cortisone injections, but the ALJ was not given evidence as to whether Plaintiff complied with these recommendations.  *Id.*  The ALJ concluded based on this medical evidence that, "These support some minor kneeling restrictions and minor restrictions in the time claimant can continuously stand/walk/sit.  However, the medical record does not support the claimant is limited beyond this functional capacity." *Id*.

Based on the medical records of Dr. Zeman, who was Plaintiff's treating physician, the ALJ did not err in determining Plaintiff's limitations.  Although Plaintiff points out additional notes from the medical records, Plaintiff offers no argument as to how or why those notes would lead to further restrictions than those found by the ALJ.  Accordingly, the Court finds the ALJ did not err is assessing Plaintiff's severe knee condition.

**B.   Wrist**

The ALJ found that Plaintiff had severe wrist impairment.  Doc. 8-3 at 14.  The ALJ noted the medical professionals had concluded that the likely cause of Plaintiff's wrist issues was a combination of carpal tunnel syndrome and bilarteral arthritis, or Plaintiff could have ulnar never compression of the wrists.  Doc. 8-3 at 19.  The ALJ noted that "In April and May of 2012, the claimant had surgery to relieve the carpal tunnel syndrome, on each wrist separately. … Since the claimant's carpel tunnel syndrome surgery was successful, he no longer suffers from more than minor limitations from this condition." *Id.*  Plaintiff argues, without citation, "The carpal tunnel surgeries did not solve the problem."  Doc. 11 at 4.  However, the Court finds that the ALJ's findings are consistent with the medical records; thus, the Court finds no error.

- 5 -

The ALJ further found that Plaintiff continues to have osteoarthritis in the wrists. Doc. 8-3 at 19. The ALJ assessed limitations based on this finding. Plaintiff argues, "The ALJ did not find appropriate impairments for Plaintiff's hands and wrists." Doc. 11 at 4-5. However, the ALJ noted that she was finding Plaintiff to be more limited than the medical evidence in finding, "...the claimant's wrist, whether by whichever possible diagnoses, seems to be more limited than given credit. The undersigned adds frequent use of upper extremities for fine and gross manipulation and feeling, in lieu of unlimited use." Doc. 8-3 at 20.

Thus, based on the medical evidence, the ALJ could have found no limitation in Plaintiff's residual functional capacity based on his wrists, but nonetheless gave a limitation. Plaintiff's argument that this Court should substitute its judgment for the ALJ's judgment and find an even further limitation is not supported by the medical evidence of record. Accordingly, the Court finds no error in the ALJ's assessment of the severity of Plaintiff's wrist condition.[3]

**C.    Urinary Problems**

At Step 2, the ALJ did not find that Plaintiff's urinary problems were severe. Doc. 8-3 at 14. However, at Step 4, the ALJ did consider Plaintiff's history of urinary problems to determine whether they met the listing. Doc. 8-3 at 16. The ALJ did not include any limitations in Plaintiff's residual functional capacity based on the urinary issues. Doc. 11 at 3-9.

Plaintiff argues that the urinary problems were severe and the ALJ's failure to list that condition at Step 2 is error that requires reversal. Defendant argues that because the urinary problems/symptoms were included at Step 4, any failure to list them at Step 2 was harmless.

---

[3] If there is sufficient evidence to support the ALJ's determination, the Court cannot substitute its own determination. *See Young v. Sullivan*, 911 F.2d 180, 184 (9th Cir. 1990). Additionally, the ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Thus, if on the whole record before this Court, substantial evidence supports the Commissioner's decision, this Court must affirm it. *See Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989); *see also* 42 U.S.C. § 405(g).

1    The ALJ found, "The claimant has had a history of urinary/prostate problems.
2    However, he had undergone a successful surgery in November of 2012.  He does not
3    have any significant issue voiding, pain, and expresses that he is happy with the results.
4    (Exhibit 13F)  Accordingly, the [claimant] does not have a chronic limited function of the
5    genitourinary systems."  Doc. 8-3 at 17.

6    Plaintiff argues that he was not cured by the surgery.  Doc. 9 at 17.  However, the
7    Court finds that there is substantial medical evidence of record to support the ALJ's
8    findings.  Thus, the ALJ did not commit error in finding that Plaintiff did not have any
9    functional capacity limitations based on his urinary issues.

10    Additionally, Plaintiff's argument that any error by the ALJ was not harmless,
11    "because Plaintiff is so close to a disability finding," is not legal error.  *See* Doc. 9 at 17.[4]
12    In other words, the Court has not located, and the Plaintiff has not cited, any law that
13    suggests that how "close" Plaintiff is to a disability finding impacts how the ALJ should
14    legally assess a condition.  Thus, the Court finds no legal error.

15    **D.    Conclusion Regarding Severity of Plaintiff's Symptoms**

16    Based on the foregoing, the ALJ did not err in assessing the severity of Plaintiff's
17    conditions.  Therefore, this Court will not reverse this decision of the ALJ based on this
18    claim of error.

19    **III.    Plaintiff's Credibility**

20    Plaintiff also argues that the ALJ committed error by failing to find the Plaintiff
21    credible and failing to credit his symptom testimony.  Doc. 9 at 17.  Plaintiff argues that
22    the ALJ could reject Plaintiff's testimony only if the ALJ gave specific, clear and
23    convincing reasons for doing so.  Doc. 9 at 18.  Defendant agrees that under existing
24    circuit law, the ALJ must give clear and convincing reasons to reject Plaintiff's testimony
25    about the severity of his symptom (although Defendant argues the circuit law is
26    inconsistent with the applicable regulations).  Doc. 10 at 8 n. 4.  Thus, the Court will

27    

28    
_____

[4]    The Court is unclear why Plaintiff believes he is "so close" to a disability
finding.

determine whether the ALJ gave clear and convincing reasons for not crediting Plaintiff's symptom testimony. *See Chaudhry v. Astrue*, 688 F.3d 661, 670-71 (9th Cir. 2012).

> The ALJ may consider many factors in weighing a claimant's credibility, including "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." [citation omitted]. If the ALJ's finding is supported by substantial evidence, the court "may not engage in second-guessing." [citation omitted].

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

The ALJ gave 4 reasons for not crediting Plaintiff's symptom testimony; specifically: 1) Plaintiff's testimony was inconsistent with the medical record; 2) Plaintiff's failed to follow some of the doctor's recommendations; 3) Plaintiff's daily activities were inconsistent with the limitations Plaintiff claimed; and 4) Plaintiff showed signs of improvement following certain treatments. Doc. 8-3 at 18-19.

### A.   Medical Record

Plaintiff's symptom testimony being inconsistent with the medical evidence is a valid reason not to credit Plaintiff's testimony. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.").

Here, the ALJ made very specific findings regarding how the medical evidence conflicted with Plaintiff's symptom testimony. In the first full paragraph of page 17 of the ALJ's opinion, the ALJ lists 5 medical reasons (and cites medical evidence) why Plaintiff's COPD was not as bad as Plaintiff claimed. Doc. 8-3 at 18. These are clear and convincing reasons supported by substantial evidence of record to reject Plaintiff's testimony regarding the severity of his breathing issues; therefore the decision of the ALJ's decision will not be reversed on this finding.

### B.   Doctor's Recommendations

Plaintiff failing to seek treatment and failing to follow the doctor's recommended

treatment are both valid reasons for the ALJ to not credit Plaintiff's symptom testimony. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("[U]nexplained, or inadequately explained, failure to seek treatment . . . can cast doubt on the sincerity of [a] claimant's pain testimony."); *Tommasetti*, 533 F.3d at 1039 (failure to follow a prescribed course of treatment can be a basis to not believe Plaintiff's symptom testimony).

Here, with respect to Plaintiff's knee pain, the ALJ noted that Plaintiff did not follow up after surgery for five years.  Doc. 8-3 at 18.  Plaintiff did not take the recommended anti-inflammatory medication.  *Id*.  Plaintiff also did not submit evidence that he did the recommended physical therapy or received the recommended cortisone injections.  *Id*.  Finally, the doctor noted that Plaintiff could walk half a mile with no difficulty, did not have difficulty getting on and off the table, and did not have difficulty with mobility for household shores.  *Id*.  Thus, Plaintiff's symptom testimony regarding his knees is inconsistent with the medical record.  *See Carmickle*, 533 F.3d at 1161.

Accordingly, the ALJ gave clear and convincing reasons supported by substantial evidence of record to reject Plaintiff's testimony regarding his knee pain.  Therefore, the decision of the ALJ's decision will not be reversed on this finding.

**C.    Plaintiff's Daily Activities**

The ALJ can discredit Plaintiff's symptom testimony if his daily activities are inconsistent with the severity of the symptoms claimed.  *Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990) (finding that the claimant's ability to "take care of her personal needs, prepare easy meals, do light housework and shop for some groceries . . . may be seen as inconsistent with the presence of a condition which would preclude all work activity" (citations omitted)).

Here, the ALJ noted that Plaintiff has a normal range of motion in his joints and normal grip strength, and is able to ride his motorcycle including using the clutch, which was inconsistent with the severity of the wrist pain and wrist limitations Plaintiff claimed.  Doc. 8-3 at 19-20.  Further, Plaintiff has no limitation in his mobility for purposes of

doing household chores, which was inconsistent with the severity of the knee pain claimed.  Doc. 8-3 at 18.

Finally, the ALJ found the daily activities as a whole were inconsistent with the severity of the limitations claimed.  Specifically, Plaintiff can manage his personal care unassisted, shop, drive, manage medication, manage finances, walk a half mile without assistance, complete chores, watch television, drive (including riding a motorcycle), purchase merchandise, and read.  Doc. 8-3 at 15.

The Court finds that the scope and strenuousness of Plaintiff's activities are clear and convincing reasons cited by the ALJ and supported by substantial evidence in the record to not credit Plaintiff's testimony regarding the severity of his symptoms.  Thus, the Court will not reverse the ALJ on this basis.

### D.     Improvement

Plaintiff's symptoms improving or being cured is a valid basis to find Plaintiff's testimony about his symptoms not credible.  *See Warre v. Comm'r of the Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for purposes of determining eligibility for SSI benefits.").

Here, the ALJ found, "[i]n April and May of 2012, the claimant had surgery to relieve the carpal tunnel syndrome, on each wrist separately. The claimant reported that he was happy with the results of the surgeries and was able to ride his motorcycle. (Exhibit 6F, 9F, & 10F).  Since the claimant's carpel tunnel syndrome surgery was successful, he no longer suffers from more than minor limitations from this condition." Doc. 8-3 at 19.  This significant improvement through surgery, coupled with Plaintiff's statements to his doctor about the outcome of the surgery, is a clear and convincing reason to not find credible Plaintiff's testimony about the severity of his symptoms in his wrists.

The ALJ further found, "[r]egarding [Plaintiff's] urinary/prostate issues, [Plaintiff] underwent prostate surgery in November of 2012.  [Plaintiff] noted that he was very

1   happy with the results. (Exhibit 13F)  The prostate surgery was successful and [Plaintiff]

2   is able to void without difficulty or notable pain." Doc. 8-3 at 19.  This lack of symptoms

3   post-surgery is a clear and convincing reason to not find credible Plaintiff's testimony

4   about the severity of his urinary limitations.

5              **E.      Conclusion Regarding Plaintiff's Credibility**

6              Based on all of the foregoing, the ALJ gave clear and convincing reasons for not

7   finding Plaintiff's symptom testimony credible.  In his appeal, Plaintiff argues that the

8   Function Reports support Plaintiff's symptom testimony and should have been relied on

9   by the ALJ.  Doc. 9 at 19.  However, as Defendant notes, these are reports created based

10  on Plaintiff's self-reported symptoms.  Doc. 10 at 12.  Moreover, when there are conflicts

11  in the evidence, the ALJ must resolve those conflicts and as long as the ALJ's decision is

12  supported by substantial evidence, this Court cannot second guess the ALJ's

13  determination.  *See Tommasetti*, 533 F.3d at 1039.   Thus, the Court will not reverse the

14  ALJ's decision to not find credible the severity of Plaintiff's symptom testimony.

15  **IV.    Conclusion**

16             For the reasons stated above,

17             **IT IS ORDERED** that the decision of the ALJ is affirmed and the Clerk of the

18  Court shall enter judgment accordingly.[5]

19             Dated this 21st day of November, 2016.

20

21

22

23                                                         James A. Teilborg
                                                    Senior United States District Judge
24

25

26

27

28

---

[5] To the extent a mandate is required, the judgment shall serve as the mandate.